# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

TIMOTHY DILL (#14166-A)                                                CIVIL ACTION

VERSUS

ASCENSION PARISH, ET AL.                                               NO. 12-0083-JJB-RLB

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on August 19, 2013.

                                RICHARD L. BOURGEOIS, JR.
                                UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TIMOTHY DILL (#14166-A)                                    CIVIL ACTION

VERSUS

ASCENSION PARISH, ET AL.                                   NO. 12-0083-JJB-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motions for Summary Judgment, rec.doc.nos. 27 and 31. These Motions are opposed.

The pro se plaintiff, an inmate previously confined at the Ascension Parish Correctional Center ("APCC"), Donaldsonville, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against the Parish of Ascension, APCC, the "Medical Provider for APCC", Parish President Tommy Martinez, Sheriff Jeffery Wiley, Warden Paul Hall, Nurse Michelle Gaudin, Nurse Practitioner Ty Gautreau and Lt. Raymond McNeil, complaining that the defendants violated his constitutional rights while he was confined at APCC between June, 2011 and June, 2012, through deliberate indifference to his serious medical needs, through a failure to properly calculate his release date, and through interference with his access to the courts.[1]

The defendants move for summary judgment, relying upon the pleadings, Statements of

---

1. Fictitious defendants "are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." Richard v. City of Harahan, 6 F.Supp.2d 565, 575 (E.D. La. 1998), citing Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 36 (E.D. Pa. 1990). When, after discovery, the plaintiff is still unable to name the fictitious defendant, the claims against the defendant should be dismissed. Id. Inasmuch as the discovery period in this case has elapsed, and the plaintiff has not sought to substitute or serve a real party in the place of the "Medical Provider for APCC," it is appropriate that this defendant be dismissed. See also Fed. R. Civ. P. 4(m), which allows dismissal of a defendant who is not served within 120 days of the filing of the Complaint.

Uncontested Material Facts, certified copies of excerpts from the plaintiff's medical records, copies of the Criminal Minutes of the 23rd Judicial District Court for the Parish of Ascension, State of Louisiana, in criminal matters docketed in State of Louisiana v. Timothy Dill, Nos. 464812 and 470688 on the Docket of that court, a copy of an application for Post-Conviction Relief filed by the plaintiff on May 1, 2012, in the 23rd Judicial District Court for the Parish of Ascension, State of Louisiana, and the affidavits of defendants Paul Hall, Michelle Gaudin and Ty Gautreau.

      Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. Celotex Corporation v. Catrett, supra, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden

of proof at trial.  Celotex Corporation v. Catrett, supra, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  Little v. Liquid Air Corp., supra, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992).

In his Complaint, the plaintiff asserts seven separate claims, specifically that from the time of his initial confinement at APCC in June, 2011, until the filing of his Complaint herein in February, 2012, prison officials (1) denied him surgery which was needed for his left shoulder, (2) denied him pain medication which was prescribed by a physician prior to his arrival at APCC, (3) refused to provide him with a copy of his medical records, (4) refused to allow him to retain possession of an arm sling which he was utilizing prior to arrival at APCC , (5) arbitrarily denied him good time credit for time spent in confinement, (6) failed to provide him with adequate access to current legal materials or adequate legal facilities, and (7) twice opened his legal mail outside of his presence.

Initially, the Court notes that the plaintiff's claim asserted against the Ascension Parish Detention Center is not properly before this Court.  Under Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of an entity to sue or be sued is determined by the law of the state in which the district court sits.  See, e.g., Darby v. Pasadena Police Dept., 939 F.2d 311, 313 (5th Cir. 1991).  Under Louisiana law, the APCC has neither the capacity to sue nor the capacity to be sued.  See, e.g., Jones v. St. Tammany Parish Jail, 4 F.Supp.2d 606, 613 (E.D. La. 1998)

(holding that a "[j]ail is not an entity, but a building"). Accordingly, the plaintiff's claim asserted against the APCC must be dismissed due to this defendant's lack of legal capacity to be sued.

Further, to the extent that the plaintiff seeks to hold Parish President Tommy Martinez and/or the Parish of Ascension liable, as administrators of APCC, for the alleged failure to provide him with appropriate medical care, for the alleged failure to properly calculate his release date, for the alleged failure to provide adequate access to legal materials or facilities, and for the alleged opening of his legal mail on two occasions, this claim is also subject to dismissal. In order for there to be liability on the part of a Parish or municipality under § 1983, the plaintiff must be able to show that there is a direct causal connection between a policy, practice or custom of the governmental entity and the constitutional violation sought to be redressed. Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004), citing Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978) ("The language and legislative history of § 1983 'compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort'"). The plaintiff must specifically identify an alleged policy, show a connection between the policy and the governmental entity itself, and show that his injuries were incurred because of the application of that specific policy. Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984), cert. denied, 472 U.S. 1016 (1985).

In the instant case, the plaintiff has provided no allegation whatever relative to any established policy or practice at APCC which may be seen to represent the custom or policy of the Parish of Ascension. To the contrary, the Parish of Ascension, and by extension the Parish President, do not have any authority over the daily management and operation of the parish jail. See Jones v. St. Tammany Parish Jail, 4 F.Supp.2d 606, 613 (E.D. La. 1998). To the contrary, as

stated in Dolan v. Parish of St. Tammany, 2013 WL 3270616 (E.D. La. June 26, 2013):

> Under Louisiana law, sheriffs ... are the final policymakers with respect to the management of jails. The sheriff's office controls the jail's inmates and employees, as well as the daily management and operation of the jail. Conversely, parishes bear [only] the responsibility of financing and physically maintaining the jails. A parish has no authority over the operations of the jail or the management of the sheriff's employees. A parish's obligations thus do not grant it the authority to control how the sheriff fulfills his duties.

Id. (citations omitted and emphasis added). Accordingly, the plaintiff's claims asserted against the Parish of Ascension and Parish President Tommy Martinez are deficient as a matter of law and must be dismissed.

Turning to the plaintiff's claims asserted against the remaining defendants, the Court notes that it is unclear from the plaintiff's Complaint whether he has named the defendants in their individual and/or their official capacities. However, in light of the liberality with which this Court interprets the pleadings of pro se litigants, Haines v. Kerner, 404 U.S. 519 (1972), the Court interprets the plaintiff's Complaint as naming the defendants in both capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 64 (1989). Additionally, in Hafer v. Melo, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. Id. at 25. Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable

because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Id.

In addition to the foregoing, the plaintiff's claim for prospective injunctive relief asserted against the defendants in their official capacities is not prohibited under the Eleventh Amendment because such a claim is also not treated as a claim against the state. Will v. Michigan Department of State Police, supra, 491 U.S. at 71. See also 15 Am. Jur. 2d Civil Rights § 101. Notwithstanding, inasmuch as the plaintiff has since been released from confinement at APCC and is no longer subjected to the alleged wrongful conduct of the defendants, his claim for prospective injunctive relief has been rendered moot by such transfer and is no longer properly before the Court. See, e.g., Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001) (holding that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot"). This aspect of the plaintiff's lawsuit, therefore, is subject to dismissal.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, it appears that three of the first four claims may be categorized as assertions that the defendants failed to attend to his serious medical needs, through the alleged failure to provide him with surgical intervention for his shoulder, with appropriate pain medication, and with permission to retain his arm sling. The Court notes that these claims arise under both the Eighth and Fourteenth Amendments to the United States Constitution, specifically because the plaintiff was a pretrial detainee during part of the time that he was confined at APCC (up until October, 2011) and was thereafter serving a sentence as a convicted prisoner (through June, 2012).[2]

---

2. A review of the record reflects that the plaintiff entered a plea of "not guilty" in connection with an initial criminal charge on or about May 4, 2011, and was ultimately convicted of that offense (together with another subsequent offense) on October 19, 2011. It

A jail official's treatment of a pretrial detainee is governed by the substantive protections of the Due Process Clause of the Fourteenth Amendment whereas, upon conviction, such treatment is evaluated under the Eighth Amendment's prohibition against cruel and unusual punishment. The Due Process Clause protects the detainee's right to be free from punishment prior to an adjudication of guilt. See Bell v. Wolfish, 441 U.S. 520, 535-36 (1979). In this context, the violation of a detainee's interest in bodily integrity, through the denial of a basic human need such as reasonable medical care, can amount to punishment under the Due Process Clause. Partridge v. Two Unknown Police Officers of the City of Houston, 791 F.2d 1182, 1187 (5th Cir. 1986). The appropriate standard to apply in analyzing a constitutional challenge by a pretrial detainee depends upon whether the challenge is an attack on a condition of confinement or a complaint about one or more episodic acts or omissions. Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996). A conditions-of-confinement case is a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." Id. In such case, the harm is caused by the condition or policy itself, and this is true, for example, where inadequate medical care, as a whole, results in intolerable conditions of confinement. Cf., Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997). In contrast to the foregoing, if a pretrial detainee is complaining of one or more particular acts or omissions by prison officials, the claim is characterized as an "episodic act or omission" case. Id. An episodic case is presented when the decision of an independent actor, such as a doctor or nurse, is interposed between the detainee and the policy or practice of the local governmental entity that permitted the harm. Hare v. City of Corinth, supra, 74 F.3d at 643. In an episodic act or omission case, the detainee must

---

further appears that the plaintiff was released from incarceration on or about May 31, 2012, but has since been returned to APCC, apparently in connection with unrelated criminal charges.

establish that the official had actual, subjective knowledge of a substantial risk of serious harm but responded with deliberate indifference to the known or perceived risk.  Id.  The deliberate indifference standard is notably the same standard that is applicable in the Eighth Amendment context.  Id. at 643-44.

In the Court's view, the plaintiff's claims of inadequate medical care while he was a pretrial detainee at APCC should be analyzed under the standard which is applicable to episodic claims.  See, e.g., Brown v. Bolin, 500 Fed. Appx. 309, 313 (5th Cir. 2012), cert. denied, ___ U.S. ___, 133 S.Ct. 2833 (2013) (finding that the plaintiff's claim of inadequate medical care presented an "episodic" claim because there was no evidence of a history of systemic failures in the provision of medical care at the facility).  Specifically, the plaintiff has presented no evidence that the determinations of the specific health care providers at APCC in this case were the result of official APCC policy or that the health care provided at APCC was generally inadequate in a constitutional sense.  Accordingly, the deliberate indifference standard is the appropriate standard for review of this claim.[3]

Under the deliberate indifference standard, a claimant must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Johnson v. Treen, 759 F.2d 1236, 1237 (5th Cir. 1985).  Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue.  Estelle v. Gamble, supra.  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).  Rather, "subjective recklessness

---

3. In any event, the courts have held that the deliberate indifference standard applicable to episodic claims is "functionally equivalent" to the reasonable relationship standard applicable to conditions-of-confinement claims.  Scott v. Moore, supra, 114 F.3d at 54.

as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 839-30 (1994). As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001), quoting Estelle v. Gamble, supra. Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

From a review of the evidence in the record, it appears clear that the plaintiff will be unable to establish that the defendants were deliberately indifferent to his serious medical needs between June, 2011, and June, 2012. The plaintiff's medical records reflect that, shortly before his confinement at APCC in June, 2011, the plaintiff was evaluated by an orthopedic specialist on May 6, 2011, for a complaint regarding his left shoulder. See rec.doc.no. 18-5 at pp. 51-55. At that time, the plaintiff complained of pain which had allegedly resulted from a work injury sustained the day previously on May 5, 2011. Id. The private physician prescribed medication and administered an injection. Id. In a follow-up visit on May 13, 2011, the plaintiff reported that he felt better but wished to determine the origin of pain which he had reportedly been experiencing in his left shoulder for approximately one year. Id., at p. 52. The physician referred the plaintiff for an MRI, but it does not appear that that diagnostic test was undertaken prior to the plaintiff's incarceration.

Thereafter, upon the plaintiff's confinement at APCC in early June, 2011, the plaintiff made no report during his initial medical screening that he was experiencing any difficulties or was undergoing any treatment in connection with his left shoulder. See rec.doc.no. 31-5 at pp. 5-9. Notwithstanding, on June 22, 2011, the plaintiff submitted a medical request at APCC for pain medication and for an MRI so that surgery could be scheduled for his shoulder. See rec.doc.no. 18-5 at pp. 20-21 and rec.doc.no. 27-3 at p. 2. The plaintiff was examined at that time by defendant Gautreau, and pain medication was apparently prescribed.[4] See rec.doc.no. 27-3 at p. 2. On June 29, 2011, the plaintiff was again seen and examined by defendant Gautreau at APCC, and additional medication was prescribed. See id. at p. 5. On July 8, 2011, the plaintiff submitted a request form, requesting that he be moved to a different unit at APCC because, inter alia, defendant McNeil was allegedly "refusing to allow me to have my arm sling." See rec.doc.no. 18-5 at p. 18. On the same date, however, the plaintiff was transported by ambulance to Prevost Memorial Hospital in Donaldsonville, Louisiana, in connection with a suspected cardiac incident. See rec.doc.no. 27-3 at p. 23. The plaintiff was again seen and examined by Nurse Gautreau at APCC on July 13, 2011, apparently for follow-up relative to the referenced cardiac incident, and it was noted at that time that the plaintiff was continuing to complain of left shoulder pain. See id. at p. 6. A physical examination revealed crepitus in the plaintiff's left shoulder but no laxity, deformity or disfigurement, and the plaintiff was noted to be neurologically intact, although his range of motion was noted to be "limited [due to] discomfort." He was prescribed medication for pain and scheduled for a "telemed" evaluation with an orthopedic specialist, which evaluation took place on August 23,

---

4. Defendant Ty Gautreau is a board certified family nurse practitioner, licensed to practice in the State of Louisiana and authorized "to diagnose medical conditions, prescribe medication, order diagnostic and medical testing, and refer patients/inmates to specialized physicians." See rec.doc.no. 31-4.

2011.  See id. at p. 7.  During that evaluation, the orthopedist noted that the plaintiff reported only "off and on" pain to his left shoulder, aggravated by activity, and that the plaintiff exhibited full range of motion, albeit with pain noted at the extremes of motion and with a positive "impingement test."  See id.  As a result of this consultation, the orthopedist ordered x-rays and an MRI of the plaintiff's left shoulder, which tests were undertaken on November 16, 2011, and were interpreted to indicate a rotator cuff tear to the plaintiff's left shoulder.  See id. at p. 12.  On the 30th of November, 2011, the plaintiff made an initial complaint regarding pain which he was experiencing in his right shoulder, and he was seen by Nurse Gautreau at APCC on December 14, 2011, who noted crepitus in the plaintiff's right shoulder, prescribed pain medication, and referred the plaintiff for an orthopedic follow-up.  See id. at p. 9.  The plaintiff was seen by Nurse Gautreau on January 4, 2012, see id. at p. 8, and underwent a second "telemed" consultation with an orthopedic specialist on January 10, 2012, see id. at p. 19, at which time an MRI of the plaintiff's right shoulder was ordered, as well as a surgical evaluation for left rotator cuff repair.  The MRI test was undertaken on January 24, 2012, and indicated a rotator cuff tear to the plaintiff's right shoulder.  See id. at p. 11.  The plaintiff was thereafter seen by defendant Gautreau at APCC on February 8 and 15 and March 7, 2012, see id. at pp. 20-22, and he participated in a follow-up "telemed" consultation with an orthopedic specialist on March 19, 2012, see id. at p. 18, at which time the orthopedist requested a surgical evaluation of the plaintiff's right shoulder as well.  See id.  The referenced surgical evaluation took place in New Orleans, Louisiana, on May 7, 2012, after which the attending physician recommended "p[hysical] t[herapy], over-the-counter pain medication, a cardiac work-up, and a follow-up consultation in six weeks.  See id. at p. 14.  The physician further opined that the plaintiff "may benefit from arthroscopic rotator cuff repair," subject to first obtaining cardiac clearance.  See id.  A follow-up consultation was undertaken with defendant Gautreau on May 17,

2012, see id. at p. 15, and the pertinent medical record reflects a reiteration that the plaintiff "first needs" clearance from a cardiologist. See id. Finally, a "telemed" consultation was apparently undertaken on May 25, 2011, for a cardiac evaluation in light of "possible rotator cuff repair," see id. at p. 16, and before any further activity could be scheduled, the plaintiff was apparently released from APCC on or about May 31, 2012. In addition to the foregoing recitation, the plaintiff's medical records reflect that during the entirety of the time that he was confined at APCC, he was prescribed medication for various complaints by defendant Gautreau, not limited to medication deemed appropriate for his complaints of shoulder pain.[5] See, e.g., rec.doc.no. 18-3 at pp. 23-49.

Based on the forgoing, it appears clear that the plaintiff will be unable to establish that any defendant has exhibited deliberate indifference to his serious medical needs. To the contrary, it appears that the plaintiff was provided with a substantial amount of medical attention in response to his many complaints at APCC, including medication, diagnostic testing, and referrals for consultations with orthopedic specialists for his shoulder complaints. Although he complains that he was not provided with an arm sling and with a specific medication which was prescribed to him by a private physician during a short course of treatment prior to his confinement, this complaint constitutes no more than a mere disagreement with the medical opinion exercised by health care providers at APCC, who made an independent evaluation regarding the plaintiff's needs and the appropriate medication for his complaints.[6] The plaintiff did not even report any problems with his

---

5. It appears from the medical records that on February 1, 2012, defendant Gautreau ordered that the plaintiff's prescription for Zanaflex be discontinued because the plaintiff was discovered to have been giving this medication to other inmates. See Rec.doc.no. 31-5 at p. 37. Notwithstanding, it appears that this medication was again prescribed to the plaintiff on February 8, 2012. See rec.doc.no. 31-5 at p. 36.

6. The plaintiff's medical records reflect numerous prescriptions for medications associated with pain, inflamation and muscle spasm, including Ibuprofen, Neurontin, Zanaflex, Tramadol and Mobic, during the course of his incarceration at APCC. See rec.doc.no. 22-3, in

shoulders upon initial evaluation at APCC, and he did not report any problem with his right shoulder until November 30, 2011, more than five months after his arrival at APCC. The plaintiff's complaints relative to his shoulders resulted in referrals for diagnostic testing, for orthopedic consultations, and for surgical evaluation. And to the extent that surgery may have been in fact recommended by an orthopedic specialist, such recommendation is not made clear in the medical record. Specifically, as stated above, the notes from the surgical evaluation of May 7, 2012, reflect only that the physician recommended physical therapy and a follow-up consultation in six weeks, and these notes further state only that the plaintiff "may" benefit from arthroscopic surgery, with such surgery apparently conditioned, in any event, upon a further work-up in light of the plaintiff's cardiac condition. In short, it appears that the plaintiff's medical condition and complaints were not ignored at APCC, that he received substantial medical treatment in response to his complaints, and that the extent of his complaint in this case is principally one of mere disagreement with the medical opinion of health care providers at APCC and with the alleged delay between his initial complaints of pain and his later consultations with orthopedic specialists. As noted above, however, the plaintiff was not entitled to the medical care that he believed he should have, and the alleged delay in treatment, which was not excessive in any event, is not legally actionable in the absence of a showing of both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, supra, 989 F.2d at 195. In the absence of any showing in these respects, the plaintiff's claims asserted against the defendants relative to his medical care at APCC must fail, and the defendants are entitled to summary judgment as a matter of law in connection with these claims.

---

globo. In addition, other than the plaintiff's assertion that his private physician provided him with an arm sling prior to his confinement at APCC, there is no indication that the referenced arm sling was medically indicated or determined to be warranted by health care providers at the facility. See Webb v. Ford, 2010 WL 3239438 (S.D. Miss. Aug. 13, 2010) (rejecting claim asserted against prison officials regarding failure to provide arm sling).

Turning to the plaintiff's remaining claims asserted against the defendants, these claims are also without merit. First, the plaintiff complains that the defendants failed to provide him with a copy of his medical records at APCC upon request. The plaintiff, however, does not have a constitutional right to copies of his prison medical records. See Martikean v. United States, 2012 WL 1986919 (N.D. Tex. April 6, 2012) (recognizing that "there is no constitutional requirement that an inmate be given the right to review or obtain his prison medical records"). And, in any event, it appears that copies of the plaintiff's records have since been filed into the record of this proceeding. See rec.doc.no. 18.

The plaintiff next complains that the defendants failed and/or refused to properly calculate the term of his criminal sentence and thereby maintained him in custody beyond the date upon which he should have been released.[7] This claim, however, amounts to an attack upon the plaintiff's period of confinement and, accordingly, was required to be asserted first in an application for federal habeas corpus relief brought under 28 U.S.C. § 2241 instead of in a civil lawsuit brought under 42 U.S.C. § 1983. In this regard, when a prisoner brings a claim that directly or indirectly challenges the length or constitutionality of his confinement, the claim must be pursued in a habeas corpus proceeding. Serio v. Members of the Louisiana State Bd. of Pardons, 821 F.2d 1112, 1117 (5th Cir. 1987). Accordingly, because the plaintiff complains herein of the miscalculation of his release date, his claim necessarily calls into question the fact or length of his confinement, and he must therefore first pursue this claim in a habeas corpus proceeding. See Hassler v. Carson County, 111 Fed. Appx. 728 (5th Cir. 2004) (affirming dismissal, as legally frivolous, of the plaintiff's claim that the prison

---

7. In his Complaint, the plaintiff alleges that the defendants failed to allow him to earn good time credit toward early release from confinement. In his application for post-conviction relief filed in state court, however, see rec.doc.no. 27-3, the plaintiff only asserted the claim that prison officials had failed to properly award him credit for time served in confinement prior to his convictions.

failed to properly calculate his release date).

Further, the plaintiff's claim for monetary damages in connection with the alleged wrongful confinement likewise fails to state a cause of action. Pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), an inmate-plaintiff's claim for monetary damages resulting from an alleged wrongful confinement is not cognizable unless and until the confinement has been effectively challenged and overturned in a separate proceeding. Id. at 2372. As stated in Heck, an inmate's claim under § 1983 is barred whenever "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. In that event, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. Accordingly, in the absence of a showing by the plaintiff that he has effectively challenged the defendants' time computation or successfully called same into question in a separate proceeding, the plaintiff's claim for monetary damages relative to his alleged wrongful confinement falls squarely within the holding of Heck v. Humphrey and must be dismissed. See Hassler v. Carson County, supra.

The plaintiff next complains that the law library at APCC is or was inadequate, consisting only of "3 or 4 outdated lawbooks and absolutely no case law books," effectively constituting "[n]o legal research resources at all" for the inmates confined at that facility.[8] This claim, in essence, is that the defendants, by limiting his access to legal research materials and assistance, have interfered with his access to the courts, and he seeks thereby to invoke the provisions of the First Amendment to the United States Constitution. Under this Amendment, "the fundamental constitutional right of

---

8. Although the plaintiff complains that the alleged deficiencies at APCC also interfere with the rights of other inmates at the prison to obtain access to the law library and to adequate legal materials and assistance, a pro se litigant does not have standing to assert the civil rights of third parties injured by the defendants' alleged unlawful conduct. Coon v. Ledbetter, 780 F.2d 1158, 1160 (5th Cir. 1986). Accordingly, this aspect of the plaintiff's Complaint is subject to dismissal.

access to the courts requires that prison authorities assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). This right extends to pretrial detainees as well as to convicted inmates. Boyd v. Nowack, 2010 WL 892995 (E.D. La. March 11, 2010), citing United States v. Moya-Gomez, 860 F.2d 706, 743 (7th Cir. 1988), cert. denied, 492 U.S. 908 (1989). This right is not absolute, however, and where an inmate or pretrial detainee is represented by retained or appointed counsel, he does not have an independent right to unlimited access to the prison law library. See Caraballo v. Federal Bureau of Prisons, 124 Fed. Appx. 284, 285 (5th Cir. 2005) ("Because Caraballo had court-appointed counsel ... he had no constitutional right of access to a law library in preparing his defense"); Buckenburger v. Strain, 2006 WL 4503353 (E.D. La. Oct. 20, 2006) ("The appointment of ... counsel satisfies the detainee's right of access to courts for his criminal proceedings; in those circumstances, he is not additionally entitled to independent access to a law library and legal materials").

In the instant case, the defendants have produced evidence reflecting that the plaintiff was charged with the violation of a protective order on May 4, 2011, and again on August 3, 2011, and that he was represented by retained counsel in connection with these offenses. See rec.doc.no. 27-4. Accordingly, because the plaintiff was provided with legal representation in connection with the pending charges, "he had no constitutional right of access to a law library in preparing his defense." Caraballo v. Federal Bureau of Prisons, supra, 124 Fed. Appx. at 286. In addition, in order for the plaintiff to state a violation of his constitutional right to meaningful access to the courts, he must allege and show that he has suffered some cognizable legal prejudice or detriment as a result of the challenged conduct. See Johnson v. Epps, 479 Fed. Appx. 583, 593 (5th Cir. 2012), citing Lewis v. Casey, 518 U.S. 343, 351 (1996). The Court notes in this regard that the plaintiff has successfully

filed pleadings in this case and in post-conviction proceedings filed in state court, and he has failed to assert in what way he has sustained actual prejudice in this or any other proceeding. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense" Lewis v. Casey, supra, 518 U.S. at 351. Accordingly, the Court finds that the plaintiff has failed to show a deprivation of his First Amendment right to meaningful access to the courts and that this claim should be dismissed.

Finally, the plaintiff complains that on two occasions, he received items of legal mail at APCC which had been opened outside of his presence. The United States Court of Appeals for the Fifth Circuit has recognized in this context that a prison official's interference with a prisoner's legal mail may violate the prisoner's First Amendment right to free speech as well as his Sixth Amendment right of access to the courts. Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993), cert. denied, 510 U.S. 1123 (1994). However, the Fifth Circuit has concluded that the mere opening and inspection of incoming prisoner legal mail, even if it occurs outside of the prisoner's presence and even if it is in violation of prison regulations, does not provide a basis for relief under § 1983. Id. at 825 (dismissing inmates' claim where there was no "cognizable constitutional claim either for a denial of access to the courts or for a denial of their right to free speech by alleging that their incoming legal mail was opened and inspected for contraband outside their presence"). See also Singletary v. Stalder, 273 F.3d 1108 (5th Cir. 2001) (re-asserting the holding in Brewer that "prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected"). Further, as noted above, in order to state a claim of the violation of his Sixth Amendment rights, an inmate must allege that he has suffered some cognizable legal prejudice as a result of the alleged wrongful conduct. Lewis v. Casey, supra. Having failed to allege that he suffered any prejudice whatever as a result of the two isolated instances of which he complains, the

plaintiff's claim arising from the alleged opening of his incoming legal mail is without merit. See Sanders v. Carnley, 100 Fed. Appx. 236 (5th Cir. 2004) (finding that an inmate's claim that a prison official opened incoming legal mail outside of the inmate's presence was insufficient to establish a claim of denial of access to the courts); Jones v. Mail Room Staff, 74 Fed. Appx. 418 (5th Cir. 2003) (holding that an inmate's failure to allege that he was prejudiced in any way when the mail room staff opened his incoming legal mail precluded his claim regarding the alleged violation of his right of access to the courts). Accordingly, this claim is subject to dismissal as well.

RECOMMENDATION

It is recommended that the plaintiff's claims asserted against the Ascension Parish Correctional Center and the "Medical Provider for Ascension Parish Correctional Center" be dismissed for failure to state a claim upon which relief may be granted and that the Motions for Summary Judgment of the remaining defendants, rec.doc.nos. 27 and 31, be granted, dismissing the plaintiff's claims, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 19, 2013.

RICHARD L. BOURGEOIS, JR.
**UNITED STATES MAGISTRATE JUDGE**